MAURICE REINITZ and Another, Plaintiffs, *v.* PROSPERITY Co., INC., Defendant.

Supreme Court, Kings County, May 9, 1932.

*Emanuel Sustick* [*J. F. Newman* of counsel], for the plaintiffs.

*Hancock, Dorr, Kingsley & Shove* [*Fred M. Ahern* of counsel], for the defendant.

WENZEL, J.   The plaintiffs are and were in 1925 practical laundry-men.   The defendant was a manufacturer of laundry machinery. If either of the plaintiffs had any practical mechanical experience or general knowledge of machinery it was not disclosed by their testimony on the trial.   They did, however, know the existent state of the laundry business in 1925, the operative limitations of the pressing machinery then in use, and the demand for improved machines of labor-saving type.   Concededly they co-operated with the defendant to produce a machine that would reduce the number of operations necessary to press a blouse, and I find as a matter of fact that during the course of consultation and experimentation they collaborated also on a shirt-pressing machine.   The plaintiffs were quite vague as to exact dimensions and details in their testimony, and, though they testified templates were made by them, none were produced at the trial.   However, after some months of experimentation, during which time plaintiffs made trips to Syracuse, and the officers of the defendant came to the plaintiffs' plant in Brooklyn, and after the manufacture of presses embodying plaintiffs' ideas, a writing was executed by the parties, on November 11, 1925, confirming the oral understanding arrived at by them at the inception of this transaction some months previously.

The plaintiffs claim that the ideas submitted to the defendant under the agreement consisted of: (1) The " Shoulder Slope; " (2) length and size of the " bucks " or platens of the presses; (3) the changing of the shape of the collar clamp from round to oval; (4) the placing of a tail clamp over the top of the lower " buck." No single one of these ideas, or perhaps we should say suggestions, I find as a matter of fact was novel.   They had all either been mentioned in prior applications for patent or had all been used singly in machines then or previously in existence.   But the plaintiffs had not undertaken to impart to the defendant any patentable idea, nor was novelty required; this the written agreement makes quite clear.   If the plaintiffs, through their practical experience, were able to outline a combination of known devices or appliances, which combination had not been known in the prior art, and which consummated the desired result of saving labor, they fulfilled their contract.   This I find they did.   That the defendant also believed that their joint efforts had been successful is indicated by the execution of the written agreement after months of experimentation and trial, and the subsequent manufacture of the new type of presses.   The plaintiffs are, therefore, entitled to a commission of five per cent on the sale of the type of presses evolved under the agreement sold in the Greater New York territory.   The agreement, while stating specifically that a commission is also to be paid the

plaintiffs on all machines sold elsewhere, leaves the amount of commission to be fixed at some later date. Plaintiffs claim that in a conversation had with the president of the defendant in January, 1926, this commission was fixed at two and one-half per cent. Since, however, it was proven to the court's satisfaction that the defendant's president was in Europe at the time this conversation was allegedly had with him in the United States, plaintiffs' proof fails as to any compensation for machines sold outside the Greater New York territory.

While, as has been stated, it was not necessary for the plaintiffs to produce any novel appliance or device, they cannot claim compensation from the defendant on machines sold by it of different pattern or design, or further improved, because the defendant has used one or more features incorporated in the machines evolved through the combined efforts of the parties to this action. No one of these features is or was the property of the plaintiffs. They might be used by any one, and the plaintiffs may not recover compensation on machines except those on which the full combination of features suggested by them is used, for it was the combination alone which entitled the plaintiffs to compensation. Accordingly, I find the plaintiffs are not entitled to compensation on C. L. C.—40s or 140s for the reason, *first*, that the " bucks " are of a different shape and size, and, *second*, that the " tail clamp " is not the one suggested by the plaintiffs. The plaintiffs have testified, it is true, that they suggested a tail clamp as found on C. L. C.— 40, but the court finds that, while they suggested a " tail holder " across the upper " buck," it was of the carding strip type, and that the metal band clamp was evolved by the defendant only after the use of the convex lower " buck."

Verdict is, therefore, directed for the plaintiffs in the amount of $208.75, with interest.

Submit findings.